UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

CARLA E. CANNON, as administratrix )
of the Estate of Michael W. Eads, )
    )
    *Plaintiff*, )          Case No. 1:06-cv-79
    )          Judge Mattice
v. )
    )
HAMILTON COUNTY, TENNESSEE, )
HAMILTON COUNTY SHERIFF'S )
DEPARTMENT, et al., )
    )
    *Defendants*. )

## MEMORANDUM AND ORDER

Plaintiff, Carla E. Cannon, as administratrix of the Estate of Michael W. Eads,[1]

brings this action against Defendants Hamilton County, Tennessee, Hamilton County

Sheriff's Department, Sheriff John Cupp, Deputy Jeff Baker, and Deputy Spencer Daniels

(collectively the "Defendants"), alleging causes of action for violation of Plaintiff's rights

under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution

pursuant to 42 U.S.C. § 1983, for conspiracy to violate Plaintiff's civil rights under 42

U.S.C. § 1985, and for fees under 42 U.S.C. § 1988. Plaintiff also asserts causes of action

against the Defendants under Tennessee state law for negligence, negligence per se,

assault and battery, intentional infliction of emotional distress, and res ipsa loquitor, and

under the Tennessee Constitution for inhumane and unduly harsh treatment of a prisoner.

Before the Court is Defendants' Motion for Summary Judgment. For the reasons

explained below, the Defendants' Motion for Summary Judgment is **GRANTED**.

---

[1] Carla E. Cannon, administratrix of the estate of Michael W. Eads, was substituted as Plaintiff when Mr. Eads died. For the sake of clarity, the Court's reference to "Plaintiff" will encompass both Mr. Eads and Ms. Cannon.

## I.    DEFENDANT'S MOTION TO STRIKE

Before turning to the instant Motion for Summary Judgment, the Court will address a preliminary issue.  Defendants have filed a Motion to Strike [Court Doc. No. 26] the affidavits of Jack Kennedy, M.D. and David Murray submitted in support of Plaintiff's response to Defendants' motion for summary judgment.  For the reasons stated below, Defendants' motion to strike is **GRANTED IN PART** and **DENIED IN PART**.

### A.    Affidavit of Jack Kennedy, M.D.

Defendants move to strike the affidavit of Jack Kennedy, M.D. on the grounds that portions of his affidavit are hearsay.  Defendants argue that "[t]o the extent that Dr. Kennedy's affidavit is offered to suggest how this event occurred, and based on what Mr. Eads supposedly said to his doctor, it is inadmissible."  (Court Doc. No. 27 at 2.) Plaintiff claims that Dr. Kennedy's affidavit is admissible under Rule 803(4) of the Federal Rules of Evidence.  (Court Doc. No. 29.)

The Court cannot consider hearsay evidence in connection with a motion for summary judgment.  *Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). Rule 803(4) outlines an exception to the hearsay rule for: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  Dr. Kennedy's affidavit states that he was Plaintiff's primary care physician.  (Court Doc. No. 21.)  Dr. Kennedy's progress notes are attached to his affidavit.

The Court finds that Dr. Kennedy's affidavit and progress notes, including any

statements made by the Plaintiff, were "made for purposes of medical diagnosis or treatment" and that they describe the "general character of the cause" of the pain and injuries to Plaintiff. Accordingly, Dr. Kennedy's affidavit and progress notes fall into Rule 803(4)'s exception to the hearsay rule and therefore may be considered by the Court in connection with the instant Motion for Summary Judgment.

Defendants' motion to strike [Court Doc. No. 26] Dr. Kennedy's affidavit and progress notes is **DENIED**.

### B. Affidavit of David Murray

In support of his response to Defendants' motion for summary judgment, Plaintiff submitted an affidavit from David Murray, a close friend of Plaintiff. Murray's affidavit relates information that he obtained during a phone call with Plaintiff prior to Plaintiff's arrest. (Court Doc. No. 19-3 ¶ 3.) It also contains information obtained during a phone call with McClendon and Deputy Baker after the Plaintiff was under arrest and in the patrol car. (*Id.* at ¶ 6.) Murray also states that he got Plaintiff out of jail the day after the arrest, observed Plaintiff's injuries, and walked through Plaintiff's house with him while Plaintiff described how he was "man handled" by the deputies. (Court Doc. No. 19-3 ¶¶ 7-11.)

Murray was not on the scene when the arrest occurred and does not purport to have any personal knowledge of the circumstances surrounding the arrest. Murray's description of the phone call with Plaintiff is hearsay. Any statements that Murray attributes to McClendon are hearsay. Murray's description of what Plaintiff told him about the arrest the next day is also based on hearsay. None of these statements will be considered by the Court on summary judgment. *See Carter v. University of Toledo*, 349 F.3d 269, 274 (6th

Cir. 2003).

The Court will consider only the portions of Murray's affidavit that reflect what he said, what he observed, and what the deputies said to him. Murray's recollection of statements that he had previously made are not hearsay as prior statements of a witness under Rule 801(d)(1). Deputy Baker's statement is an admission of a party opponent and not hearsay under Rule 801(d)(2). The Court will consider Murray's statements regarding Plaintiff's injuries because he was able to personally observe the injuries.

Accordingly, Defendants' motion to strike [Court Doc. No. 26] the affidavit of David Murray is **GRANTED IN PART** and **DENIED IN PART**. The Court **STRIKES** paragraphs 3, 5, 9, and 10 in their entirety. The Court also **STRIKES** McClendon's statements in paragraph 6 and Plaintiff's description of the events in paragraph 10. All non-stricken portions of Mr. Murray's affidavit will be considered by the Court in connection with Defendants' instant Motion for Summary Judgment

## II.     STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the

credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

In the instant case, Defendants have filed a properly-supported motion for summary judgment, thus shifting to the Plaintiff the burden to set forth specific facts showing that there is a genuine issue for trial. Plaintiff is therefore required to come forward with some significant and probative evidence to support his claim. *Celotex Corp. v. Catrett*, 477 U.S. at 324. As indicated above, inadmissible hearsay evidence may not be used to support or oppose a motion for summary judgment, *see Carter v. University of Toledo*, 349 F.3d

-5-

269, 274 (6th Cir. 2003), and the Court will not consider any such evidence.

## II.   FACTS

This dispute arises out of the arrest of Plaintiff on charges of domestic assault and vandalism.  At the outset, the Court observes that Plaintiff's complaint is not verified and therefore cannot serve as an affidavit in opposition to a summary judgment motion.  Fed. R. Civ. Proc. 56(e).  The only evidence that Plaintiff has provided to support his claim is an affidavit from David Murray, a close friend of Plaintiff, and an affidavit and accompanying medical records from Plaintiff's treating physician, Dr. Jack Kennedy. As stated above, the Court has stricken portions of Murray's affidavit as based on hearsay and therefore improper to be considered on summary judgment.  *See Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003).

Plaintiff has presented no admissible evidence related to events occurring before or at the time of the arrest. The Court must therefore base the majority of its analysis on the only evidence available in the record that describes the circumstances of Plaintiff's arrest, the affidavit of Deputy Baker, one of the arresting officers.  The Court will, however, construe the facts before it, and draw all reasonable inferences, in the light most favorable to Plaintiff.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  Those facts and inferences are as follows.

In March 2005, Patricia McClendon was at the home of her boyfriend, Plaintiff Michael W. Eads. They got into an argument and McClendon left the house.  Plaintiff followed her out.  McClendon got into her car and Plaintiff stood behind the car in the

driveway. Plaintiff then came to the door of McClendon's car, opened it, and struck the windshield twice.

McClendon called 911 on her cellular telephone. Plaintiff grabbed the phone and threw it into the yard. McClendon went back into Plaintiff's house to use his telephone to call 911. Plaintiff came into the house and took that telephone from McClendon. McClendon ran out of the house, retrieved her cell phone from the yard, and ran across the street to a neighbor's driveway. She again called the police from her cell phone. Plaintiff went to McClendon's car and took the keys. Plaintiff called McClendon on her cell phone and told her that he had left the keys on the hood of the car. McClendon informed Plaintiff that she had called the police. Plaintiff then went into his house and turned off the lights. (Court Doc. No. 16-2 ("Baker Aff.") at 5.)

Deputies Jeff Baker and Spencer Daniels were dispatched in response to McClendon's report of domestic violence. When they arrived, McClendon was in the street in front of Plaintiff's house. She told them what had previously occurred. (Baker Aff. ¶ 3.) Baker and Daniels went to Plaintiff's door but he did not respond. They had the police dispatcher call his home telephone but he did not answer. (*Id.* at ¶ 4.)

Baker and Daniels went around to the side of the house and saw that Plaintiff's sliding glass door was partially open. Deputy Baker saw a rifle propped up against the door jamb and took possession of it. The deputies saw Plaintiff inside the house, sitting on his couch with his hands tucked into the cushions. They instructed Plaintiff to show his hands but Plaintiff did not respond. They drew their weapons, entered Plaintiff's home, and commanded Plaintiff to show his hands. Plaintiff raised his hands, demonstrating that he was unarmed. At the deputies request, Plaintiff stood, but would not answer questions

about the incident with McClendon.  (*Id.*)

Baker and Daniels told Plaintiff that he was under arrest and attempted to handcuff him but he pulled away.  Both Baker and Daniels used an arm-bar technique to restrain Plaintiff and get him in handcuffs.  During the scuffle, Plaintiff suffered a scrape on his forehead and a broken wrist.  Plaintiff smelled of alcohol and his responses to the deputies were erratic.  Plaintiff refused to walk under his own power and the deputies dragged him by the handcuffs to the patrol car.  (*Id.* at ¶ 5.)

When he was in the patrol car, Plaintiff realized that he did not have identification on him.  Deputy Daniels returned to Plaintiff's house to try to find identification but was unable to locate it.  The deputies then escorted Plaintiff back into his house to get his identification.  The deputies took off Plaintiff's handcuffs and allowed him to stand in his kitchen and smoke a cigarette.  They then escorted Plaintiff back to the patrol car and placed the handcuffs on him again, this time in the front of his body.  McClendon was not in Plaintiff's house during the arrest but appeared when he was in the patrol car to protest against the deputies arresting Plaintiff.  (*Id.* at ¶ 6.)

Deputy Baker took Plaintiff to Hamilton County Jail.  Plaintiff declined emergency treatment but was seen by a nurse at the jail before he was cleared for booking.  The nurse cleaned and bandaged the scrape on Plaintiff's forehead.  The nurse did not notice, and was not made aware of, any other injuries, including a broken wrist that was later diagnosed by Plaintiff's doctor.  Plaintiff signed a form indicating that he was not in need of emergency medical attention and was not suicidal.  (Court Doc. No. 16-3 at 1-2, 5.)

Following the arrest, Plaintiff had a broken left wrist, scrapes and bruising on his elbows and knees, and pain in his shoulder.  (Court Doc. No. 21.)  A week later, Plaintiff

complained of fatigue and pain in his lower back and was experiencing numbness in his legs and fingers. (*Id.*)

## III.    ANALYSIS

Defendants seek summary judgment as to Plaintiff's claims against them on several grounds.

### A.    Claims Under 42 U.S.C. § 1983.

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2000). "Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005).

To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000).

Plaintiff alleges in his complaint that his rights under the Fourth, Eighth, and

Fourteenth Amendments to the U.S. Constitution were violated. (Court Doc. No. 1, ¶ 44.) At the outset, the Court notes that the Eighth Amendment's protections apply only to post-conviction inmates. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005); *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992). As Plaintiff's § 1983 claims relate only to his arrest and not to any post-conviction treatment, Plaintiff cannot sustain an Eighth Amendment claim. Accordingly, Plaintiff's § 1983 claims under the Eighth Amendment are **DISMISSED WITH PREJUDICE**.

With respect to Plaintiff's § 1983 claims against Defendants in their official capacities, the Court notes that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Thus, the § 1983 claims against Deputies Baker and Daniels in their official capacities, and against Sheriff John Cupp in his official capacity, are actually claims against Hamilton County and are redundant in light of identical claims brought against the County. Therefore, Plaintiff's § 1983 claims against Baker and Daniels in their official capacities and against Sheriff John Cupp in his official capacity are **DISMISSED WITH PREJUDICE**.

1.    *Individual Claims against Deputies Baker and Daniels*

With respect to Plaintiff's § 1983 claims against Baker and Daniels in their individual capacities, Defendants contend that such claims should be dismissed because Baker and Daniels are entitled to qualified immunity. (Court Doc. No. 16 at 7-8.)

The doctrine of qualified immunity shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The United States Supreme Court has articulated a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596, 598 (2004); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under this test, district courts must:

> consider whether "the facts alleged show the officer's conduct violated a constitutional right." If the plaintiff can establish that a constitutional violation occurred, a court should ask "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition."

*Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 201).

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiff must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

The key inquiry in determining whether a right was clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Ewolski*, 287 F.3d at 501 ("For a right to

be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992))). Although the conduct in question need not have been previously held unlawful, the unlawfulness must be apparent in light of pre-existing law. *Id.* Officials are entitled to qualified immunity " 'when their decision was *reasonable*, even if mistaken.' " *Pray*, 49 F.3d at 1158 (quoting *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Further, " 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.' " *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 349 (1986)).

With respect to his § 1983 claim based on the Fourth and Fourteenth Amendments, Plaintiff alleges that the actions of Baker and Daniels constituted false arrest, unlawful entry, excessive force, and denial of medical treatment. (Court Doc. No. 1, ¶¶ 36 & 44.) Defendants contend that the actions of Baker and Daniels were lawful and that, in any case, such actions were objectively reasonable given the situation. (Court Doc. No. 2 ¶ 14; Court Doc. No. 16 at 7-8.)

### a. False Arrest

With respect to Plaintiff's § 1983 false arrest claim, the threshold question is whether a constitutional violation occurred. The key inquiry in a false arrest claim is whether the arrest was based on probable cause. *See Anderson v. Creighton*, 483 U.S. 635, 663-64 (1987); *Pierson v. Ray*, 386 U.S. 547, 556 (1967); *Stemler*, 126 F.3d at 871. The United States Supreme Court has described "probable cause" as follows:

> Probable cause exists where "the facts and circumstances within their (the officers') knowledge and of which they had reasonably

> trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

*Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)); *see also Lyons*, 417 F.3d at 573. "The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005). The existence of probable cause in a § 1983 action ordinarily presents a jury question, "unless there is only one reasonable determination possible." *Gardenhire*, 205 F.3d at 315.

Assuming that no probable cause existed and, therefore, that a constitutional violation occurred, Plaintiff must then present sufficient evidence to show that the actions of Baker and Daniels were not objectively reasonable in light of clearly established constitutional rights. There is no question that the right at issue was clearly established: it is beyond dispute that a reasonable officer would be aware that an arrest requires probable cause, as that principle is contained within the text of the Fourth Amendment. U.S. Const. amend. IV; *Lyons*, 417 F.3d at 573 ("It has long been true that the Fourth Amendment requires probable cause for an arrest."); *Gardenhire*, 205 F.3d at 314-15; *Pray*, 49 F.3d at 1158. The question, then, is whether the belief of Baker and Daniels that they had probable cause to arrest Plaintiff was objectively reasonable.

Plaintiff was charged with domestic assault and vandalism. (Court Doc. No. 16-4 ¶ 8 & Ex. 6.) If it was objectively reasonable for Baker and Daniels to believe that they had probable cause to arrest Plaintiff for either of these crimes, they are entitled to

qualified immunity.

(1)    *Domestic Assault*

Under Tennessee law, "[a] person commits domestic assault who commits an assault as defined in § 39-13-101 against a person who is that person's family or household member." *State v. Duncan*, 2005 WL 3504899, *4 (Tenn. Crim. App. Dec. 21, 2005) (quoting Tenn. Code Ann. § 39-13-111).  Assault is defined in § 39-13-101 as:

> A person commits assault who (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

*Id.* (quoting Tenn. Code Ann. § 39-13-101(a)).  The domestic assault statute, § 39-13-111, defines "family or household member" as a

> spouse, former spouse, person related by blood or marriage, or person who currently resides or in the past has resided with that person as if a family, or a person who has a child or children in common with that person, regardless of whether they have been married or resided together at any time.

Tenn. Code Ann. § 39-13-111(a).  Domestic assault is either a class A or class B misdemeanor.  Tenn. Code Ann. §§ 39-13-111(c)(1), 39-13-101(b)(1).

Tennessee has a general rule against warrantless arrests for misdemeanor offenses.  Tenn. Code Ann. § 36-3-619.  However, "If a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse, whether the crime is a misdemeanor or a felony . . . the preferred response of the officer is arrest."  Tenn. Code Ann. § 36-3-619.

Given these elements, it was objectively reasonable for Baker and Daniels to believe that they had probable cause to arrest Plaintiff.  The deputies were dispatched to

a domestic violence incident.  McClendon told the deputies that Plaintiff had struck her windshield while she was seated in the car.  (Baker Aff. ¶ 3, Ex. A-1.)  It was reasonable for the deputies to conclude that Plaintiff's actions had caused McClendon to "reasonably fear imminent bodily injury," as required by the statute.  McClendon also told the deputies that Plaintiff was her boyfriend.  Although a boyfriend is not technically a "family or household member" unless there is a shared child or residence, the deputies could have reasonably believed that McClendon and Plaintiff qualified as family members under the statute.

"The Fourth Amendment does not require that a police officer *know* a crime occurred at the time the officer arrests or searches a suspect .. .  The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty."  *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998).  The Court concludes that an officer, confronted with the situation which faced Baker and Daniels, could have reasonably concluded that there was probable cause to arrest Plaintiff for domestic assault.  Accordingly, Baker's and Daniels's actions were lawful in light of clearly established law.

(2)    <em>Vandalism</em>

Under Tennessee law, "[a] person commits vandalism when he or she 'knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent.' "  *State v. Sims*, 2005 WL 3132441, *6 (Tenn. Crim. App. Nov. 22, 2005) (quoting Tenn. Code Ann. § 39-14-408(a)).

Given these elements, the Court concludes that Baker and Daniels were objectively reasonable in their belief that probable cause existed to arrest of Plaintiff for vandalism.

First, it is uncontested that Plaintiff struck McClendon's windshield, causing it to break. (Baker Aff. ¶ 3, Ex. A-1.)  Second, the only reasonable inference that can be drawn from the evidence is that Plaintiff did not have McClendon's consent to strike her windshield. (*Id.*)  Thus, the Court concludes that an officer, confronted with the situation which Baker and Daniels encountered, could have reasonably concluded that he had probable cause to arrest Plaintiff and, therefore, that his actions were lawful in light of clearly established law.

As a result, Baker and Daniels are entitled to qualified immunity with respect to Plaintiff's § 1983 false arrest claims against them in their individual capacities, and such claims are **DISMISSED WITH PREJUDICE**.

b.    Unlawful entry into Plaintiff's home

Plaintiff also alleges that Baker and Daniels violated his Fourth and Fourteenth Amendment right to be free from unlawful search and seizure by entering his home without an arrest or search warrant.  (Court Doc. No. 1 ¶ 44, Court Doc. No. 19 at 8.)  Whether Plaintiff's Fourth Amendment rights were violated is a separate inquiry from whether the deputies are entitled to qualified immunity for their actions.  *See O'Brien v. City of Grand Rapids*, 23 F.3d 990. 995-1000 (6th Cir. 1994) (court conducted separate inquiries into whether there were exigent circumstances to justify the suspect's warrantless arrest and, upon finding that the arrest was not justified by exigent circumstances, whether the arresting officers were entitled to qualified immunity for their actions).  If there was no constitutional violation, Plaintiff can not recover under § 1983.  *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (first element of a § 1983 claim is that there

was a deprivation of a right secured by the Constitution).  If the Court finds that there was a constitutional violation, Plaintiff may still be unable to recover under § 1983 if the Defendants are entitled to qualified immunity.  *O'Brien*, 23 F.3d at 1000.  The Court will address separately whether the warrantless arrest of Plaintiff violated the Fourth Amendment and whether Baker and Daniels are entitled to qualified immunity.

(1)     *Fourth Amendment Violation*

The Fourth Amendment to the United States Constitution provides:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  The Fourth Amendment has been interpreted to "prohibit the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest."  *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375 (1980).  It is undisputed that Baker and Daniels did not have a warrant to arrest Plaintiff or consent to enter Plaintiff's home.  Thus, unless one of the well-defined exceptions to the Fourth Amendment's general warrant requirement apply, Plaintiff may be able to maintain his § 1983 claim for unlawful entry.  One such exception is that of "exigent circumstances."

"Exigent circumstances are situations where 'real immediate and serious consequences' will 'certainly occur' if the police officer postpones action to obtain a warrant."  *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (quoting *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994)).  The United States Court of Appeals for the Sixth Circuit has held that the following situations may give rise to exigent

circumstances: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *U.S. v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). In a suit for civil damages (as here), whether exigent circumstances existed to excuse a warrantless entry is a question for the jury, unless the underlying facts are essentially undisputed so that a jury could reach but one conclusion. *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1991).

Deputies Baker and Daniels were not in hot pursuit of Plaintiff when they entered his home. Because Plaintiff was suspected of having committed domestic assault and vandalism by having struck McClendon's car, there was no threat of evidence being lost or destroyed. There is no indication that Plaintiff was attempting to escape. Accordingly, the only possible basis for a finding of exigent circumstances is that Plaintiff posed a danger to the deputies or others. In an affidavit submitted in support of summary judgment, Deputy Baker states that he perceived Plaintiff as a threat to the deputies and as a threat to the safety of others. (Baker Aff. ¶ 4.)

This case is comparable factually to *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1991) in which the Sixth Circuit held that a warrantless entry and arrest was justified by exigent circumstances. In that case, the officers were responding to a call involving gunshots fired by a suicidal and possibly homicidal gunman who also told the dispatcher that he would shoot any cops that came to his house. Two officers went around to the back of the house and heard someone inside yelling in an angry tone. One officer was able to see a weapon near the door of the home. The officer entered the home to determine whether there were any victims in the house and retrieve the weapon. The officer could see that the suspect was in the front of the house. The officer proceeded through the

suspect's house, toward the front door, and arrested the suspect on the front porch.

The suspect filed a § 1983 suit claiming that the officers had violated his Fourth Amendment right by entering his home to arrest him without a warrant. The district court entered summary judgment in favor of the officers, finding that there were exigent circumstances justifying the entry and that the officers were shielded from liability by qualified immunity. *Id.* at 1375. The Sixth Circuit affirmed the district court's ruling, stating that "the officers were truly faced with an emergency situation, and were entitled to enter the house without a warrant." *Id.* at 1375-76.

In this case, Baker and Daniels were responding to a domestic violence situation. They were aware that Plaintiff had committed a violent act by striking and damaging McClendon's car. Although the deputies had been told that Plaintiff was inside the house, Plaintiff did not respond to repeated attempts to summon him. The deputies went around the house to locate Plaintiff and found a weapon at the doorway of Plaintiff's home. They observed Plaintiff inside the home but could not see his hands. The deputies called to Plaintiff, ordering him to raise his hands, but Plaintiff did not respond. All of these facts are similar to what the Sixth Circuit considered to be exigent circumstances in *Hancock*.

However, there are significant differences between the instant case and *Hancock*. In this case, there is no evidence that Plaintiff had verbally or physically threatened the deputies. He was unresponsive to their commands but, unlike the suspect in *Hancock*, had not threatened to use force against them in any way. Although the deputies located a weapon in his house, there is no evidence that he had used the weapon or threatened to use it. Moreover, at the time they entered Plaintiff's house, the deputies had possession of the only weapon that they had seen and had no reason to believe that Plaintiff had

additional weapons.

The Sixth Circuit has held that the mere presence of a weapon inside a home does not create exigent circumstances; rather, there must be a showing of an intent or willingness to use the weapon to justify a warrantless entry. *Compare United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) (exigent circumstances exist when nine shots are fired because this shows that suspect was willing to use the firearm) *to United States v. Killebrew*, 560 F.2d 729, 733-34 (6th Cir. 1977) (no exigency when officers were aware that there was a gun inside home but there was no indication that suspect intended to use it). As discussed above, there is nothing in the record before the Court indicating that Plaintiff had threatened to use a weapon. While the facts show that Plaintiff was uncooperative, mere failure to cooperate does not, in and of itself, give rise to exigent circumstances. *See U.S. v. Chambers*, 395 F.3d 563, (6th Cir. 2005) (no exigent circumstances when suspect yelled "police" then retreated into home and refused to cooperate with officers).

Baker and Daniels were responding to a call reporting a domestic dispute, which are known to be inherently dangerous and unstable situations. *See U.S. v. Humphrey*, 2007 WL 1341356, *5 (W.D. Tenn May 4, 2007) (noting that domestic violence situations are "without question potentially volatile and dangerous.") The Court's inquiry, however, is "limited to whether exigent circumstances existed at the moment the police entered the residence," *Ewolski v. City of Brunswick*, 287 F.3d 492, 503 (6th Cir. 2002), and, at the time the deputies entered Plaintiff's residence, there was no apparent continuing threat to McClendon. Moreover, there is no evidence in the record before the Court that the deputies were aware that anyone else was inside the home who could have been

threatened by Plaintiff. *Compare Causey v. City of Bay City*, 442 F.3d 524, 529-30 (6th Cir. 2006) (finding exigent circumstances when officers responded to call that gunshots were fired in a home and no one had entered or left the home since the call was made).

Although there is a preference under Tennessee law for the responding officer to arrest the perpetrator of an act of domestic violence,[2] such preference of the Tennessee General Assembly cannot override an individual's rights under the Fourth Amendment of the United States Constitution. The Sixth Circuit has not directly addressed the impact that a domestic violence situation may have on the exigent circumstances justifying a warrantless entry to effectuate an arrest. But courts in other jurisdictions have held, almost uniformly, that once a victim of domestic violence is removed from the situation, the exigency required to justify a warrantless entry is also removed. *See Espiet v. State*, 797 So.2d 598, 602-03 (Fla. App. 2001) (no exigent circumstances when domestic violence victim was outside of home and offender had barricaded himself inside home and would not come out); *Commonwealth of Pennsylvania v. Wright*, 742 A.2d 661, 665 (Penn. 2000) (no exigent circumstances when victim was removed from the situation); *Singer v. Court of Common Pleas*, 879 F.2d 1203, 1206-07 (3rd Cir. 1989) (no exigent circumstances when victim was removed from home and offender refused to come out. Although there was evidence that offender had guns, there was no evidence he threatened to use them.) *But see Walker v. West Caln Township*, 170 F. Supp. 2d 522, 528-29 (E.D. Penn. 2001) (finding exigent circumstances when victim was outside of home and offender was inside but officer was informed that offender was intoxicated, had firearms, and was unlikely to

---

[2]     Tenn. Code Ann. § 36-3-619.

be cooperative with police).

Whether exigent circumstances existed to justify the Plaintiff's warrantless arrest is an intricate factual determination that must be decided on a case-by-case basis. *U.S. v. Rohrig*, 98 F.3d 1506, 1519 (6th Cir. 1996). The Defendants "bear the 'heavy burden' of demonstrating exigency." *U.S. v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984)). To justify a failure to obtain a warrant, the facts must show that the threat to officers or public was "immediate." *United States v. Morgan*, 743 F.2d 1158, 1162-63 (6th Cir. 1984). Although this is an extremely close call, the Court finds that Defendants have not met their burden of showing that exigent circumstances justified their warrantless entry into Plaintiff's home. Accordingly, the Court also finds that such entry ran afoul of the Fourth Amendment's general warrant requirement. This, however, does not end the Court's inquiry.

### (2)    *Qualified Immunity*

Baker and Daniels have claimed qualified immunity for their actions in entering the Plaintiff's house. (Court Doc. No. 16 at 7.) "The question of whether an official is protected by qualified immunity does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994). The relevant inquiry here is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed so as to justify the warrantless entry into Plaintiff's house. *Dickerson v. McClellan*, 101 F.3d 1151, 1158

(6th Cir. 1998).

> When determining the objective legal reasonableness portion of the qualified immunity standard, individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the plaintiff's constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendants' position would understand that what he did violated those rights.

*O'Brien*, 23 F.3d at 999. Baker and Daniels are immune from liability "if officers of reasonable competence could disagree on whether the conduct violated the plaintiff's right." *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991).

As discussed above, the Court has concluded that Baker and Daniels warrantless entry into Plaintiff's home was not justified by exigent circumstances and therefore unlawful. However, the deputies "are not held to the standards of a constitutional law scholar concerning the vagaries of the exigent circumstances exception to the warrant requirement of Fourth Amendment law." *O'Brien*, 23 F.3d at 1000. There is no Sixth Circuit precedent that would have served to put the deputies on notice that their actions were unlawful. The Court cannot employ 20/20 hindsight to evaluate the objective reasonableness of the deputies' actions. *Id.* at 999. Given the acknowledged closeness of its call regarding the existence of exigent circumstances in this case, the Court finds that "officers of reasonable competence could disagree" on whether the situation faced by Baker and Daniels constituted exigent circumstances justifying a warrantless entry into Plaintiff's house.

When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiff must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should

have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). The Plaintiff has not met his burden of showing that an objectively reasonable officer would have known that the actions of Baker and Daniels violated Plaintiff's rights.

Thus, Defendants Baker and Daniels are entitled to qualified immunity for their warrantless entry into Plaintiff's home. Accordingly, Plaintiff's claim that Baker and Daniels are liable to him under 42 U.S.C. § 1983 for unlawful entry is **DISMISSED WITH PREJUDICE**.

c.    Excessive Force

With respect to Plaintiff's § 1983 excessive force claim, the threshold question is whether a constitutional violation occurred. The key inquiry in an excessive force claim is whether the degree of force used was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 394, 396-97 (1989); *Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999); *Martin v. Heideman*, 106 F.3d 1308, 1311-12 (6th Cir. 1997). The existence of excessive force ordinarily presents a jury question, unless only one reasonable determination is possible. *See Bass*, 167 F.3d at 1046.

Assuming that the degree of force used was excessive and, therefore, that a constitutional violation occurred, Plaintiff must then prove that the actions of Baker and Daniels were not objectively reasonable in light of his clearly established constitutional rights. There is no question that the right of persons to be free from the use of excessive force is clearly established. *Pray*, 49 F.3d at 1158. The question, then, is whether the actions of Baker and Daniels in applying the force used against Plaintiff were objectively

reasonable in light of clearly established law. If the circumstances surrounding the event were such that the application of force was clearly unnecessary and unreasonable, then Defendants Baker and Daniels would not be entitled to qualified immunity for their actions. *See Pray*, 49 F.3d at 1159.

In determining whether a use of force was excessive, the Court may look at the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest. *Lyons*, 417 F.3d at 575; *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992). The ultimate question, however, is "whether the totality of the circumstances justifie[d]" the use of force. *Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 479 (E.D. Mich. 2006). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, the Court must take into account the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "[T]he right to make an arrest . . . carries with it the right to use some degree of physical coercion or threat thereof to effect it," and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* at 396 (internal quotation marks and citation omitted).

In this case, and for the reasons explained below, the Court concludes that given the totality of the circumstances faced by Baker and Daniels, the degree of force used by them to subdue the Plaintiff and effectuate his arrest was objectively reasonable. The

deputies were called to the scene of a domestic dispute and were told that Plaintiff had struck McClendon's windshield. As discussed above, this information was sufficient to give the deputies probable cause to arrest Plaintiff. As they approached Plaintiff's residence, they located and seized a weapon. Plaintiff was unresponsive to their commands and his hands were not visible. It was therefore reasonable for the deputies to be concerned for their safety.

Baker and Daniels used force against Plaintiff when they commanded him at gunpoint to show his hands. The Court finds that this use of force was not objectively unreasonable considering that the deputies had already located and seized one weapon and Plaintiff's hands were between the cushions of the couch and not visible to them. *See Crisp v. City of Kenton*, 1998 WL 180561, *5 (6th Cir. April 8, 1998) (holding that it was not excessive force for police officers arriving at the scene of a crime in progress to detain suspects at gunpoint). The fact that the deputies later learned that Plaintiff's hands were empty and that he was unarmed does not change the fact that, at the time they pulled their guns on Plaintiff, it was objectively reasonable for the deputies to fear for their safety. *See Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 1972 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment.")

Baker and Daniels also used force against Plaintiff during the arrest in the form of an arm-bar restraining procedure. As discussed above, at the time the deputies entered Plaintiff's house, it was not unreasonable for the deputies to believe that the Plaintiff was a threat to their safety. The use of an arm-bar restraining procedure is not excessive force if an officer feels that his safety is threatened. *Fox v. DeSoto*, 2006 WL 1642294, *7 (W.D.

Ky. June 6, 2006) ("use of the 'arm-bar take down' procedure, a standard police procedure, was not an excessive use of force when he feared for the safety of himself and others."). Moreover, when Plaintiff began resisting the deputies efforts to arrest him, the deputies' use of the arm bar technique was not objectively unreasonable and did not constitute excessive force. *Feldman v. Community College of Allegheny*, 85 Fed. Appx. 821, 825 (3rd Cir. 2004) (use of an arm-bar to subdue arrestee was not excessive force in light of arrestee's physical resistance).

The deputies also forcefully removed Plaintiff from his house and dragged him to the patrol car. Plaintiff was intoxicated, refused to walk on his own, and was flexing his feet. (Baker Aff. ¶ 5.) These actions could objectively be construed by reasonable officers as Plaintiff continuing to resist arrest. The Court finds that, under these circumstances, the force used by the deputies to move Plaintiff from his house to the patrol car was not excessive force. *See Damron v. Pfannes*, 785 F.Supp. 644, 648 (E.D. Mich. 1992) (granting summary judgment to defendant officers on basis of qualified immunity finding that officers dragging handcuffed plaintiff on the ground to the police car was reasonably necessary considering the allegation that he was resisting arrest.)

Thus, the Court concludes that an officer, confronted with the situation faced by Baker and Daniels, could have reasonably concluded that his actions were lawful in light of clearly established law. As a result, Baker and Daniels are entitled to qualified immunity with respect to Plaintiff's § 1983 excessive force claims against them in their individual capacities, and such claims are **DISMISSED WITH PREJUDICE**.

d.    <u>Denial of Medical Treatment</u>

Plaintiff claims that Defendants failed to "render aid to the Plaintiff for his injuries." (Court Doc. No. 1 ¶ 35.)  The Court construes this claim as one for denial of adequate medical treatment under the Fourteenth Amendment Due Process Clause. *See City of Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979 (1983).

Persons in custody but not yet convicted are afforded the right to adequate medical treatment under the Fourteenth Amendment.  *See Gray v. City of Detroit*, 399 F.3d 612, 615-16 (6th Cir. 2005).  For Plaintiff's claim to succeed, he must show that the deputies acted with "deliberate indifference to [his] serious medical needs."  *Id.* (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001)).  Such a claim has both an objective and a subjective component, and requires that the Plaintiff show that he: "(1) had a sufficiently serious medical need; and (2) that the officers knew that the serious medical need posed a substantial risk to the detainee, but proceeded to disregard the risk." *Schliewe v. Toro*, 138 Fed. App'x 715, 722 (6th Cir. 2005).

Defendants have produced evidence showing that, prior to taking Plaintiff to the station for booking, Deputy Baker took Plaintiff to be evaluated by a nurse at the Hamilton County Jail clinic.  (Court Doc. No. 16-3 ¶¶ 2, 3.)  The nurse treated Plaintiff for a scrape on his forehead and stated that "[o]ther than the scrape on the forehead, [she] did not notice and was not made aware of any other wounds or physical problems at the time." (*Id.* ¶¶ 3, 4.)  Plaintiff signed a form stating that he did not need emergency medical attention prior to entering the Hamilton County Jail and that he was not suicidal.  (Court Doc. No. 16-4 at 31.)

The undisputed evidence shows that Plaintiff has not demonstrated that he was suffering from a "serious medical need" or that Defendants knew of the medical need and disregarded it. Accordingly, Plaintiff's § 1983 claim for denial of medical treatment is **DISMISSED WITH PREJUDICE**.

    2.    <u>*Claims Against Hamilton County and Hamilton County Sheriff's Department*</u>

The County seeks the dismissal of Plaintiff's § 1983 claims against it because (1) the County cannot be held liable under a theory of *respondeat superior* and (2) Plaintiff cannot establish an unconstitutional policy, custom, or practice of the County.

    a.    <u>Liability of Hamilton County</u>

    (1)    *Respondeat Superior* Liability

First, Defendants seek the dismissal of Plaintiff's § 1983 claims against the County to the extent such claims are based on the theory of *respondeat superior*.

It is well-established that a governmental entity cannot be held liable under § 1983 on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff does not contest this point of law and apparently does not dispute Defendants' assertion that Plaintiff's § 1983 claims against the County, to the extent they are based on such theory, should be dismissed. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's § 1983 claims against the County to the extent such claims are based on a theory of *respondeat superior*, and such claims are **DISMISSED WITH PREJUDICE**.

(2)     *Unconstitutional Policy, Custom, or Practice*

Second, the County seeks the dismissal of Plaintiff's § 1983 claims against it to the extent such claims are based on an alleged unconstitutional policy, custom, or practice.

Although a governmental entity cannot be held liable under § 1983 on the basis of a theory of *respondeat superior*, such an entity can be liable under § 1983 "when execution of [the entity's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [Plaintiff's] injury." *Monell*, 436 U.S. at 694. To be held liable, such policy or custom of the entity must be the "moving force" behind the constitutional violation. *Id.* In this instance, Plaintiff alleges that the County's failure to adequately train, supervise, and control Defendants Baker and Daniels is the official policy that caused harm to Plaintiff. (Court Doc. No. 1 ¶¶ 37-43.)

Failure to train may serve as the basis for § 1983 municipal liability, but only "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of" persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). "A showing of simple or even heightened negligence" is not sufficient to establish deliberate indifference. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). Rather, " 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410; *Stemler*, 126 F.3d at 865. Thus, municipal liability is proper only when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

In determining whether a municipality is liable under § 1983 for failure to train its officers,

> the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390-91. Further, "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391.

Plaintiff states in his response to Defendants' Motion for Summary Judgment that "proper training would prevent injuries such as those sustained by [Plaintiff]." (Court Doc. No. 19 at 2.) There is, however, no evidence in the record of any inadequacies of the training programs provided by the Sheriff's Department or by Hamilton County. Nor is there evidence in the record of any policy or custom of the Department's or the County's approval of warrantless arrests in violation of the Fourth Amendment, arrests in the absence of probable cause, the use of excessive force, or deprivation of an arrestee's right to medical treatment.

Plaintiff also claims that Defendant's failure to investigate Plaintiff's arrest and subsequent injuries showed deliberate indifference. (Court Doc. No. 1 ¶ 40.) Ordinarily, a subsequent failure to investigate is not a "moving force" behind an alleged constitutional violation. *Shepherd v. City of Columbus*, No. 04-CV-302, 2006 WL 840386, at *7 (S.D. Ohio Mar. 30, 2006). In some cases, however, the failure to investigate "rises to the level of a policy of acquiescence that in itself was the 'moving force.' " *Id.* In such cases, evidence of "a post-injury failure to investigate . . . may permit an inference that the misconduct which injured the plaintiff was pursuant to an official policy or custom." *Tompkins v. Frost*, 655 F. Supp. 468, 472 (E.D. Mich. 1987). The court in *Tompkins* explained as follows the inference that can be drawn from a failure to investigate:

> The strength of the inference which could be drawn from a failure to investigate would vary from case to case depending on the nature of the notice given to the responsible person in the *Monell* entity and whether that person intentionally or recklessly failed to take appropriate action. By analogy to the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), a willful failure to investigate by a county policymaker would create a very strong inference that the underlying incident of misconduct was pursuant to a policy or custom. . . . To the contrary, a merely negligent or inadvertent failure to investigate would have little, if any, probative value as to whether a policy previously existed.

*Id.*

In this case, the evidence in the record does not rise to the level necessary to permit an inference that the Defendant officers' treatment of Plaintiff was pursuant to County or Department policy or custom. As was the case in *Tompkins*, the record in this case is "devoid of evidence that the failure of the [County or the Department] to investigate was

willful, reckless or grossly negligent." *Id.* at 473.

Unlike the showing in *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989), where the prisoner-plaintiff presented evidence not only of a failure to investigate his complaint regarding his medical treatment in the jail, but also of a failure to supervise and correct the overall situation in the jail in light of numerous incidents similar to the incident involving the plaintiff, Plaintiff in this case presents basically no evidence beyond a mere allegation of failure to investigate. When a plaintiff is relying solely on a failure to investigate as the basis for municipal liability, the plaintiff must present evidence sufficient to create a genuine issue of material fact as to whether the failure to investigate was willful, reckless, or grossly negligent, which the Plaintiff here has not done.

Without such evidence, there is nothing in the record to suggest that the failure to investigate was the "moving force" behind Defendants' treatment of Plaintiff. *See also Black v. City of Memphis*, 215 F.3d 1325, 2000 WL 687683, at *3 (6th Cir. May 19, 2000). As a result, Plaintiff has not presented sufficient evidence to avoid summary judgment as to his § 1983 claim against the County. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's § 1983 claims against the County, and such claims are **DISMISSED WITH PREJUDICE**.

b.    Liability of the Department

Plaintiff's § 1983 claims against the Hamilton County Sheriff's Department also fail for at least two reasons.   First, sheriff's departments are "merely sub-units of the municipalities they serve" and, therefore, are not proper defendants under § 1983.  *Sargent v. City of Toledo Police Dep't*, 150 Fed. App'x 470, 475 (6th Cir. 2005).  Second, even if the Court were to consider Plaintiff's claims against the Department, such claims are identical to Plaintiff's claims against the County and, therefore, would be considered under precisely the same standards as the Court employed in its analysis above with respect to the County.  *See Tennessee v. Garner*, 471 U.S. 1, 22 (1985).[3]  Thus, because Plaintiff's claims against the County were dismissed, Plaintiff's claims against the Department are also subject to dismissal.   Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's § 1983 claims against the Department, and such claims are **DISMISSED WITH PREJUDICE**.

C.    **Claims Under 42 U.S.C. § 1985.**

Section 1985 provides a cause of action when "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with the intent to deny any citizen equal protection of the laws." 42 U.S.C. § 1985(2).  Plaintiff must establish that (1) he is member of a protected class, and (2) he was discriminated against based on such membership.

---

[3]    The Court notes that Defendants did not argue either of these reasons for the dismissal of the Department in their Motion for Summary Judgment.  However, pursuant to *Hunley v. DuPont Automotive*, 341 F.3d 491, 501 (6th Cir. 2003), the Court may grant summary judgment on grounds other than those argued in the motion.

Plaintiff pled a cause of action under § 1985 in his complaint. (Court Doc. No. 1 ¶44, 47.) However, he has not backed up this allegation with any admissible evidence showing a conspiracy to deny him of any right. Plaintiff has not produced evidence showing that he is a member of a protected class or that he was discriminated against based on such membership.

Accordingly, Defendants' motion for summary judgment in this regard is **GRANTED**. Plaintiff's § 1985 claims against all Defendants are **DISMISSED WITH PREJUDICE**.

### D. Claims under 42 U.S.C.§ 1988.

Section 1988 allows the Court, at its discretion, to award attorney's fees and expert witness fees in conjunction with § 1983. Because the Court has dismissed all of Plaintiff's § 1983 claims, Plaintiff's claim for attorney's fees under § 1988 must fail.

Accordingly, Plaintiff's claims against all Defendants under 42 U.S.C. § 1988 are **DISMISSED WITH PREJUDICE**.

### E. Claims Under State Law and the Tennessee Constitution.

The Court has original jurisdiction only for Plaintiff's claims that arise out of federal law. The Court has dismissed all of Plaintiff's claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1988. Thus, the only claims remaining are those brought under state law for negligence, negligence per se, common law assault and battery, common law intentional infliction of emotional distress, joint and several liability, res ipsa loquitur, and for violation of Article 1 of the Tennessee Constitution. In the absence of original jurisdiction over these claims, the Court has supplemental jurisdiction over the claims. *See*

28 U.S.C. § 1367.

Section 1367 provides, in pertinent part, as follows: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c). Pursuant to § 1367, it is "within the district court's discretion to decline to exercise jurisdiction over Plaintiffs' state-law claims once it dismisse[s] the federal claims." *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007). Moreover, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Robert N. Clemens Trust*, 485 F.3d at 853.

Plaintiff has cited nothing in his brief, and the Court is aware of nothing, which indicates that this case is anything other than the "usual case" in which the relevant factors weigh in favor of declining to exercise supplemental jurisdiction. Accordingly, the Court shall decline to exercise supplemental jurisdiction over Plaintiff's state law claims against all Defendants. Plaintiff's state law claims shall be **DISMISSED WITHOUT PREJUDICE**.

IV.    **CONCLUSION**

For the reasons explained above, it is **ORDERED** as follows:

1.    Defendant's Motion to Strike [Court Doc. No. 26] is **GRANTED IN PART** and **DENIED IN PART**.

2.     Defendant's Motion for Summary Judgment [Court Doc. No. 15] is **GRANTED**.

3.     Plaintiff's claims of false arrest, unlawful entry, excessive force, and denial of medical treatment under 42 U.S.C. § 1983, for conspiracy to violate Plaintiff's rights under 42 U.S.C. § 1985, and for fees under 42 U.S.C. § 1988 are **DISMISSED WITH PREJUDICE**.

4.     Plaintiff's claims under Tennessee state law for negligence, negligence per se, assault and batter, intentional infliction of emotional distress, and res ipsa loquitor are **DISMISSED WITHOUT PREJUDICE**.

5.     Plaintiff's claims for inhumane and unduly harsh treatment of a prisoner under the Tennessee Constitution are **DISMISSED WITHOUT PREJUDICE**.

The Clerk shall close the file in this case.

SO ORDERED this 1st day of November, 2007.

_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE